Thomas J. COYNE, Jr. and Timothy F. Hagan, on behalf of the State of Ohio and all Ohio Taxpayers, Plaintiffs–Appellants,

v.

The AMERICAN TOBACCO COMPANY, also known as The American Tobacco Company, Inc.; American Brands, Inc.; B.A.T. Industries P.L.C.; R.J. Reynolds Tobacco Company; RJR Nabisco, Inc.; Brown & Williamson Tobacco Corporation, formerly known as The American Tobacco Company, individually and as Successor by Merger to; British–American Tobacco Co., Ltd.; Batus Inc.; Batus Holding, Inc.; Philip Morris, Inc.; Philip Morris Companies, Inc.; Liggett & Myers, Inc.; Liggett Group, Inc.; Brooke Group, Ltd; Lorillard Tobacco Company, also known as Lorillard Tobacco Company, Inc.; Lorillard, Inc.; United States Tobacco Company; UST, Inc.; Council for Tobacco Research—U.S.A., Inc.; Tobacco Institute, Inc.; Novelart Manufacturing Company; Eby–Brown Company; The Kroger Company; Riser Foods, Inc., Defendants–Appellees.

No. 98–3269.

United States Court of Appeals, Sixth Circuit.

Argued: March 17, 1999.

Decided and Filed: July 12, 1999.

Jack D. Maistros (argued and briefed), Thomas M. Wilson (briefed), John R. Climaco (briefed), Climaco, Climaco, Lefkowitz & Garofoli, Cleveland, Ohio, Stanley M. Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio, for Plaintiffs–Appellants Thomas J. Coyne, Jr., Timothy F. Hagan.

John Winship Read, Vorys, Sater, Seymour & Pease, Cleveland, Ohio, for Defendant–Appellee American Brands, Inc.

Percy Squire, Bricker & Eckler, Columbus, Ohio, for Defendant–Appellee B.A.T. Industries P.L.C.

Theodore M. Grossman (argued and briefed), Dennis L. Murphy (briefed), Jones, Day, Reavis & Pogue, Cleveland, Ohio, for Defendants–Appellees R.J. Reynolds Tobacco Company, RJR Nabisco, Inc.

Phillip J. Campanella (briefed), Calfee, Halter & Griswold, Cleveland, Ohio, for Defendants–Appellees Brown & Williamson Tobacco Corporation, Batus, Inc., Batus Holding, Inc.

Diane P. Chapman, Baker & Hostetler, Cleveland, Ohio, for Defendant–Appellee Philip Morris, Inc.

Mary M. Bittence, Diane P. Chapman (briefed), Baker & Hostetler, Cleveland, Ohio, Daniel K. Webb (briefed), Thomas J. Frederick (briefed), Kevin J. Narko (briefed), Winston & Strawn, Chicago, Illinois, for Defendant–Appellee Philip Morris Companies, Inc.

Tyler L. Mathews (briefed), Kenneth J. Walsh (briefed), McDonald, Hopkins, Burke & Haber, Cleveland, Ohio, for Defendants–Appellees Liggett & Myers, Inc., Liggett Group, Inc., Brooke Group, Ltd.

Susan Dumay Wolfe (briefed), Shook, Hardy & Bacon, Kansas City, Missouri, Patrick M. McLaughlin (briefed), McLaughlin & McCaffrey, Cleveland, Ohio, for Defendants–Appellees Lorillard Tobacco Company, Lorillard, Inc.

Steven D. Bell (briefed), Ulmer & Berne, Cleveland, Ohio, for Defendant–Appellee U.S. Tobacco Company.

Thomas J. Collin (briefed), Thompson, Hine & Flory, Cleveland, Ohio, for Defendants–Appellees UST, Inc, Council for Tobacco Research—U.S.A., Inc.

Charna E. Sherman (briefed), David J. Michalski (briefed), Hahn, Loeser & Parks, Cleveland, Ohio, for Defendant–Appellee Tobacco Institute, Inc.

Eric S. Brown (briefed), Catherine E. Huston (briefed), Michael J. Renner (argued), Simon B. Karas, Assistant Attorney General (briefed), Office of the Attorney General of Ohio, Columbus, Ohio, for Amicus Curiae Betty D. Montgomery.

Before: BOGGS, CLAY, and GODBOLD,* Circuit Judges.

## OPINION

CLAY, Circuit Judge.

Plaintiffs–Appellants, Thomas J. Coyne, Jr. and Timothy F. Hagan, on behalf of the State of Ohio and all Ohio taxpayers, appeal from the order entered by the district court dismissing this taxpayer action for lack of standing. Plaintiffs seek recovery of money expended by the State of Ohio to treat Ohio citizens who suffer from nicotine addiction and other tobacco-related illnesses and diseases. Plaintiffs assign error to the district court's decision to exercise subject matter jurisdiction over this action exclusively alleging state law causes of action, and contend that the district court erroneously concluded that Plaintiffs lacked standing to sue on the basis of their alleged "tax burden" injury. For the reasons set forth below, we **AFFIRM** the district court's decision.

## I.

On September 16, 1996, Plaintiffs, two locally elected Ohio public officials,[1] filed a class action lawsuit against Defendants, various out-of-state tobacco manufacturers and in-state tobacco wholesalers and retailers, in the Court of Common Pleas, Cuyahoga County, Ohio, alleging that Defendants were knowledgeable about the addictiveness of nicotine; yet conspired to manipulate the level of nicotine in cigarettes in order to create and sustain smokers' addiction to tobacco products. Plaintiffs did not file suit in their representative capacity or claim that they themselves are addicted to or have suffered any physical injury as a result of Defendants' conduct. Instead, Plaintiffs alleged injury on behalf of the State of Ohio on the theory that the state had expended sums of money to pay for the health care of Ohio citizens due to tobacco-attributable illnesses. Specifically, Plaintiffs seek reimbursement of the public treasury pursuant to twelve state law causes of action: (i) breach of a "special duty" to render services for the protection of the public health; (ii) consumer fraud; (iii) restitution to the state and taxpayers of Ohio; (iv) unjust enrichment; (v) conspiracy to restrain and suppress research and the dissemination of information as to the harmful effects of smoking; (vi) violation of Ohio consumer protection statutes; (vii) breach of express warranty; (viii) breach of implied warranty; (ix) strict product liability; (x) fraud and deceit; (xi) negligent misrepresentation; and (xii) negligence. In addition, Plaintiffs asserted a cause of action for equitable, injunctive and/or declaratory relief. In essence, Plaintiffs' suit is premised upon the belief that Defendants have been unjustly enriched at the expense of the State of Ohio, and that Defendants have unlawfully shifted the financial responsibility for their conduct to the state and ultimately the taxpayers.

On October 16, 1996, Defendants removed this case to federal district court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants alleged that Plaintiffs had fraudulently joined the Ohio wholesale and retail tobacco suppliers in order to destroy diversity jurisdiction.[2] In response, Plaintiffs filed a motion to remand the case to state court on Novem-

---

* The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

1. Plaintiff Thomas J. Coyne is the duly elected mayor of the City of Brook Park, Ohio, and Plaintiff Timothy F. Hagan is one of three duly elected County Commissioners of Cuyahoga County, Ohio.

2. The tobacco wholesalers and retailers are Novelart Manufacturing, EBY–Brown Co., Kroger Co., and Riser Foods, Inc. These Defendants are Ohio corporations or corporations whose principal places of business are in Ohio, and whose business includes the promotion, marketing, sale and distribution of cigarettes across the State of Ohio. These Defendants do not design, manufacture, or package cigarettes.

ber 15, 1996, asserting that no Defendant had been fraudulently joined, and therefore, the district court should remand the action for lack of subject matter jurisdiction. The district court denied Plaintiffs' motion to remand on November 3, 1997, finding in relevant part that the "local" Defendants had been fraudulently joined in the action.

While the remand motion was pending before the district court, Plaintiffs filed an amended complaint on January 9, 1997. Defendants in turn filed a joint motion to dismiss the amended complaint on January 21, 1997, asserting that Plaintiffs lacked standing to bring a taxpayer suit against the tobacco defendants as Plaintiffs were not directly harmed by any act of Defendants and that Plaintiffs could not sue on behalf of the State of Ohio. After briefing by the parties, and submission of an amicus curiae brief on behalf of the Ohio Attorney General, the district court issued a Memorandum Opinion and Order on February 12, 1998, granting Defendants' motion to dismiss Plaintiffs' amended complaint in its entirety. The district court determined that Plaintiffs lacked standing to bring suit on behalf of the State of Ohio or as an aggrieved taxpayer because their only claimed injury, the "tax burden" injury, was not direct, but merely a generalized grievance shared by all taxpayers and not likely to be redressed by the relief requested. Plaintiffs filed a timely notice of appeal to this Court on March 12, 1998.

## II.

■ A complaint will be dismissed for failure to state a claim only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Wright v. MetroHealth Med. Ctr.,* 58 F.3d 1130, 1138 (6th Cir. 1995). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). This Court reviews de novo the district court's decision to dismiss a claim for lack of standing. See *Ohio Ass'n of Indep. Schools v. Goff,* 92 F.3d at 419, 421 (6th Cir.1996).

■ Additionally, this Court reviews de novo a district court's decision on subject matter jurisdiction. See *Certain Interested Underwriters at Lloyd's London, England v. Layne,* 26 F.3d 39, 41 (6th Cir. 1994). However, we must respect the district court's factual findings that are the basis of a jurisdictional determination unless clearly erroneous. See *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 326 (6th Cir.1990).

## III.

■ Plaintiffs assert that this action, originally filed in state court and involving only issues of state law, should be adjudicated in state court. Plaintiffs argue that the district court erred in denying their motion to remand the case to state court because Plaintiffs pleaded a viable cause of action against non-diverse Defendants. Plaintiffs therefore contend that the district court lacked subject matter jurisdiction to hear their claims because complete diversity between the parties did not exist at the time of removal. We disagree.

■ When reviewing the denial of a motion to remand a case to state court, we first look to determine whether the case was properly removed to federal court. See *Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 453 (6th Cir. 1996). When an action is removed based on diversity, we must determine whether complete diversity exists at the time of removal. Indeed, "[d]iversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *SHR Ltd. Partnership v. Braun,* 888 F.2d 455, 456 (6th Cir.1989);

accord *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806). In this regard, a party "seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction." *Layne*, 26 F.3d at 41; *Her Majesty The Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989) (stating that "[t]he party seeking removal bears the burden of establishing its right thereto").

Moreover, this Court has recognized that fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds. See *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994); accord *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998) (noting that "[f]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity"). To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. See *Alexander*, 13 F.3d at 949. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve "all disputed questions of fact and ambiguities in the controlling ... state law in favor of the non removing party." *Id.* All doubts as to the propriety of removal are resolved in favor of remand. See *id.*

Upon examination of the record, we find that there was sufficient evidence for the district court to conclude that Plaintiffs could not have established a cause of action against the non-diverse Defendants under state law, thereby permitting removal of this action to federal court. While Plaintiffs' complaint alleged that the local Defendants were liable to Plaintiffs as suppliers pursuant to Ohio Rev.Code § 2307.78(A)(1), either for the failure to warn about the alleged nicotine defect or for the negligent sale of cigarettes, Plaintiffs do not allege that the wholesalers and retailers knew of the so-called nicotine defect any sooner than members of the general public; thus, the wholesalers and retailers are excluded from product liability under § 2307.78(A)(1). See *Gawloski v. Miller* Brewing Co., 96 Ohio App.3d 160, 644 N.E.2d 731, 734 (1994) (noting that there is no duty to warn of "dangers [that] are generally known and recognized by the ordinary consumer"); *Sapp v. Stoney Ridge Truck Tire*, 86 Ohio App.3d 85, 619 N.E.2d 1172, 1180–81 (1993) (finding that a supplier is liable for failure to warn only when he knows or should know of an alleged defect). Moreover, the Ohio wholesale and retail suppliers could not be held liable under § 2307.78(A)(1) since they never made any representations about cigarettes or nicotine, and accordingly could not be liable for making any advertised representations regarding the dangers of nicotine in cigarettes. See *Gawloski*, 644 N.E.2d at 734 (stating that a supplier may be liable when "through its advertised representations, unrealistically minimizes the known dangers or implies that the dangers do not exist"). Hence, under Ohio law, there was no reasonable basis for predicting that, on the facts alleged, the local Defendants could be held liable for negligence. Accordingly, because Plaintiffs failed to plead viable state law causes of action against the local Defendants, the district court correctly denied Plaintiffs' remand motion on the basis of fraudulent joinder.[3] See *Alexander*, 13 F.3d at 949 (noting that a party is fraudulently joined if there is "no reasonable basis for predicting that the state law might impose liability on the facts involved").

---

**3.** Because we conclude that the district court properly denied the motion to remand, we need not address Defendants' argument that Plaintiffs have failed to properly preserve for appeal their claim challenging the district court's decision to deny Plaintiffs' remand motion.

## IV.

In their next assignment of error, Plaintiffs claim that the district court erroneously determined that they lacked standing to bring this taxpayer action, as they have authority to sue because they have made contributions as taxpayers to Ohio's General Revenue Fund, and, as public employees, to the Public Employees Retirement Fund ("PERS"). Plaintiffs claim that as taxpayers they have had to pay higher taxes to these funds, and thus the Ohio treasury, for expenditures made by the State of Ohio for smoking-related illnesses. Because of their "special interest" in these funds, Plaintiffs contend that they have standing to assert a claim against Defendants by virtue of their "tax burden" injury. We disagree.

Standing is "the threshold question in every federal case." *Warth,* 422 U.S. at 498, 95 S.Ct. 2197. The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into " 'a vehicle for the vindication of the value interests of concerned bystanders.' " *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)). To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be "fairly traceable" to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. See *Valley Forge,* 454 U.S. at 472, 102 S.Ct. 752. Hence, the "irreducible minimum" constitutional requirements for standing are proof of injury in fact, causation, and redressability. See *id.* A plaintiff bears the burden of demonstrating standing and must plead its components with specificity. See *id.*

In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing restrictions. First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth,* 422 U.S. at 499, 95 S.Ct. 2197 (citations omitted). Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens. See *Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. 752. Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. See *id.* These additional restrictions enforce the principle that, "as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Pestrak v. Ohio Elections Comm'n,* 926 F.2d 573, 576 (6th Cir.1991).

### A.

An alleged injury must be "direct" to constitute an injury sufficient to support standing. See *Taub v. Commonwealth of Kentucky,* 842 F.2d 912, 918 (6th Cir.1988). Article III requires that a plaintiff show that he " 'personally has suffered some actual or threatened injury' " as a result of the allegedly illegal conduct of the defendant. *Valley Forge,* 454 U.S. at 472, 102 S.Ct. 752 (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)). Here, Plaintiffs have not suffered a legally cognizable injury sufficient to confer standing. Although Plaintiffs contend that they have a "special interest" in state funds, and thus bear a "tax burden," Plaintiffs have not suffered an injury that is distinct from the injury shared by all Ohio taxpayers and public employees. See *ASARCO Inc. v. Kadish,* 490 U.S. 605, 613, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) (finding that taxpayers do not have a sufficient stake in a controversy to support standing "where their own injury is not distinct from that

suffered in general by other taxpayers or citizens"). Furthermore, Plaintiffs do not allege facts to distinguish themselves from all other Ohio taxpayers. Indeed, Plaintiffs' injury is not direct or particularized to Plaintiffs, as they seek damages not for any personal injuries, but rather for the injury to others—individual smokers and the State of Ohio. Significantly, the Supreme Court has recognized that "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268–69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). Thus, under settled law, the alleged "tax burden" injury is not an injury in fact sufficient to confer standing.

Plaintiffs do not directly challenge the finding that their "tax burden" is merely derivative, and therefore insufficient to establish an injury in fact. They instead claim that Ohio common law recognizes that they have standing to prosecute this action since they have a "special interest" in state funds. As support, Plaintiffs cite Ohio cases involving taxpayer suits against the state government to enjoin alleged illegal expenditures. See, e.g., *State ex rel. Masterson v. Ohio State Racing Comm'n*, 162 Ohio St. 366, 123 N.E.2d .1, 2 (1954) (action to restrain State Racing Commission from expending state funds and issuing permits for horse racing competitions); *State ex rel. Stubbs v. Wallace*, 140 Ohio St. 166, 42 N.E.2d 893, 894 (1942) (taxpayer action to compel the registrar of motor vehicles to collect motor vehicle license taxes); *State ex rel. Struble v. Davis*, 135 Ohio St. 593, 22 N.E.2d 81, 82 (1939) (taxpayer action to compel the tax commissioner to value certain railroad properties).

▪ We find Plaintiffs' reliance on Ohio precedent misplaced. Citation to Ohio cases is unpersuasive, as "[s]tanding to sue in any Article III court is ... a federal question which does not depend on the party's prior standing in state court."

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). This Court has explained that "standing is a matter of federal law, not state ... law." *City Communications, Inc. v. City of Detroit*, 888 F.2d 1081, 1086 (6th Cir.1989).

Moreover, none of the cases upon which Plaintiffs rely recognize a right by a state taxpayer to bring an action against third parties whose conduct causes the legal payout of public funds, thereby causing citizens' taxes to increase. Rather, the cases cited by Plaintiffs are primarily all actions in which taxpayers sought to prevent a government entity from making an alleged illegal expenditure of public funds. Indeed, every common law taxpayer action that has been recognized by the Ohio courts has involved allegations of illegal or unauthorized expenditure of public funds, conduct by a public officer in excess of legal authority, or failure of a public officer to perform a ministerial duty. See *Masterson*, 123 N.E.2d at 2 (finding that the capacity to bring a common law taxpayer action arises "when public officers attempt to make an illegal expenditure of public money, or to create an illegal debt"). In this case, however, Plaintiffs do not allege that there has been an illegal expenditure of public funds by the government. Moreover, Plaintiffs never joined the State of Ohio, any State official, or any governmental authority as a party. Plaintiffs fail to cite, and we could not identify, any Ohio precedent where a taxpayer had standing to enforce the law directly against a third party, as Plaintiffs attempt here. Thus, we find that Plaintiffs do not have a separate basis for standing based upon Ohio common law.

## B.

▪ Not only must a plaintiff's injury be direct, a plaintiff must show that a favorable court decision will redress the injury. See *Valley Forge*, 454 U.S. at 472, 102 S.Ct. 752 (recognizing that a plaintiff lacks standing if the plaintiff's alleged inju-

ry is not "redressable" by a favorable court decision). Plaintiffs' complaint suggests no likelihood that victory in this suit would result in either their receipt of a tax refund or a reduction in the tax bill for Ohio citizens generally. Reimbursement of the public treasury would not necessarily redress Plaintiffs' claimed "tax burden" injury because even if Plaintiffs secured a favorable judgment, the power to decrease state taxes or issue a tax refund rests within the province of the legislative and executive branches of the State of Ohio. As the district court correctly pointed out, it is the state's decision to determine how to utilize a recovery of state funds. Plaintiffs' injuries are not "redressable," as Plaintiffs cannot establish that a favorable court decision is likely to remedy the alleged violation.

## V.

In sum, we find that Plaintiffs do not have standing to bring this action on behalf of the State of Ohio or Ohio taxpayers. Plaintiffs have not met the minimal, constitutional requirements for standing since they have not shown a particularized injury, or that their alleged injury will be redressed by a verdict in their favor.[4] Accordingly, this Court lacks subject matter jurisdiction and this action must be remanded to the state court from which it was removed. See 28 U.S.C.A. § 1447(c) (West Supp.1999) (stating that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

▇▇▇ Despite the express language of § 1447(c), Defendants contend that remand to state court in this case would be futile, as the state court, as a matter of state law, would dismiss the claims against

Defendants for lack of standing. We reject Defendants' argument since the futility of a remand to state court does not provide an exception to the plain and unambiguous language of § 1447(c). Indeed, the Supreme Court noted that " 'the literal words of § 1447(c) ... on their face, give ... no discretion to dismiss rather than remand an action.' " *International Primate Protection League v. Administrators of Tulane Educ. Fund,* 500 U.S. 72, 89, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991) (quoting *Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Maine Dep't of Human Servs.,* 876 F.2d 1051, 1054 (1st Cir.1989)). Other circuits, relying on International Primate, have held that there is no implicit futility exception hidden behind the plain language of § 1447(c). See *University of South Ala. v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999) (recognizing that § 1447(c) "is mandatory and may not be disregarded based on speculation about the proceeding's futility in state court"); *Bromwell v. Michigan Mut. Ins. Co.,* 115 F.3d 208, 213–14 (3d Cir.1997) (holding that a federal court that lacks jurisdiction over an action removed from state court "must remand and not dismiss on the ground of futility"); *Roach v. West Virginia Reg'l Jail & Correctional Facility Auth.,* 74 F.3d 46, 49 (4th Cir. 1996) (holding that in the absence of federal subject matter jurisdiction over a removed action, the case shall be remanded to state court, rather than dismissed); *Smith v. Wisconsin Dep't of Agric., Trade and Consumer Protection,* 23 F.3d 1134, 1142 (7th Cir.1994) (stating that there is no futility exception to § 1447(c)). Hence, in a removed action, upon determination that a federal court lacks jurisdiction, remand

---

4. Alternatively, Defendants claim that this matter has been rendered moot as a result of settlement agreements entered into by the *State of Ohio and Defendants in State ex rel. Montgomery v. Phillip Morris, Inc.,* No. 97 CVH–05–5114 (Franklin Cty. Ct. Nov. 25, 1998), to resolve, among other things, Ohio's suit against Defendants and other tobacco

manufacturers and suppliers to recover health care costs allegedly incurred by the State of Ohio due to smoking-related diseases. We do not reach this issue of mootness, however, because we conclude that Plaintiffs lacked standing to bring this taxpayer action, in any event resolving this appeal in favor of Defendants.

to state court is mandatory even if it appears that remand would be futile.

## VI.

For the reasons set forth above, we agree with the district court's holding that Plaintiffs lacked standing. However, the district court erred when it dismissed Plaintiff's action, as opposed to remanding Plaintiffs' claims against Defendants to state court in accordance with *International Primate*. Therefore, we **REMAND** this case to the district court with instructions to remand this action to state court.